IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>MISTY D. CALVERT,<br>Defendant. | Case No. 16–CR–40027–JPG–2 |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Misty D. Calvert's Motion for Compassionate Release. (ECF No. 80). For the reasons below, the Court **DENIES** Calvert's Motion.

### I. PROCEDURAL & FACTUAL HISTORY

#### A. The Conviction

In 2016, a federal grand jury in this District indicted Calvert for (1) conspiring to manufacture and distribute methamphetamine, and (2) possessing pseudoephedrine knowing it would be used to manufacture methamphetamine. (Indictment 1–2, ECF No. 1). She pleaded guilty the next year, (Plea Agreement 1, 10, ECF No. 62); and the Court sentenced her to an 88-month term of imprisonment, (Judgment 2, ECF No. 75). She is currently incarcerated at Federal Correctional Institution ("FCI") Pekin in Illinois. (Def.'s Mot. for Compassionate Release at 1).

#### B. The Presentence Investigation Report

Before sentencing, the Court considered the Presentence Investigation Report ("PSR") prepared by the U.S. Probation Office, which provided information about the nature and circumstances of the offense and Calvert's background. (Second Revised PSR 1, ECF No. 72).

According to the PSR, "various law enforcement agencies in Southern Illinois, in a concerted effort to reduce drug activity in the area," first learned in 2013 that Calvert and her

boyfriend, Ricky Carle, "were involved in purchasing pills to be used in the manufacture of methamphetamine. Furthermore, both traveled to the East St. Louis/St. Louis area to obtain heroin." (*Id.* at 5). She was eventually arrested in 2015 when officers found her "unconscious in the back seat of [a] vehicle" with a used hypodermic needle and dealer amounts of methamphetamine and heroin. (*Id.* at 5–6). She later "admitted to using $100 worth of heroin a day for a three-year period"—about 1.3 kilograms. (*Id.* at 6). "Approximately one week prior to her arrest for this offense, Ms. Calvert was admitted to the hospital due to an overdose of heroin." (*Id.* at 12). Sometimes she would also "mix bath salts with the heroin that she bought." (*Id.*).

Before pleading guilty to these offenses, Calvert was convicted of two other crimes in Illinois state court. (*Id.* at 8–9). The first came in 2015 after she stole from a Wrights Do-It Center. (*Id.* at 8). She faced similar charges the next year after she stole from a Walmart. (*Id.* at 9).

Calvert has four children. (*Id.* at 11). At the time of her sentencing, their ages ranged from three-to-nine years old. (*Id.*). They are now being cared for by Calvert's parents. (Letter from Mother 1, ECF No. 83). This year, however, her father suffered from "a severe heart attack"; and her mother "suffered a stroke." (*Id.*). Calvert herself suffers from obesity, with a body-mass index "of about 30" kg/m$^2$. (Def.'s Mot. for Compassionate Release at 1).

### C.  Calvert's Motion for Compassionate Release

In 2020, Calvert moved for a sentence modification under 18 U.S.C. § 3582(c)(1)(A), also called *compassionate release*. (*Id.* at 1). She contends that her weight makes her especially vulnerable to the COVID-19 virus. (*Id.* at 1). And according to her mother, Calvert "has taken over 30 classes" while incarcerated, received her GED, and has maintained a clean disciplinary record. (Letter from Mother at 1).

The COVID-19 virus, of course, is now a global pandemic. At FCI Pekin, 11 inmates currently have COVID-19; 184 have recovered; and none have died. *Coronavirus*, Bureau of Prisons (last visited Dec. 1, 2020).[1] In brief, Calvert argues that her <u>and her parents'</u> increased risk of experiencing serious complications if they contract COVID-19 is an *extraordinary and compelling reason* warranting her release. (Def.'s Mot. for Compassionate Release at 1).

## II. LAW & ANALYSIS

The Court recognizes that compassionate release is appropriate for some defendants considering the COVID-19 pandemic. Even so, the defendant bears the burden of showing <u>not only</u> that she faces an increased from the virus, <u>but also</u> that incarceration is no longer necessary to advance the purposes of punishment (i.e., justice, deterrence, incapacitation, and rehabilitation). Calvert failed to meet that burden.

### A. Legal Standard

District courts generally "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c). That said, an exception exists for when "extraordinary and compelling reasons warrant such a reduction . . . ." *Id.* § 3582(c)(1)(A)(i). Even then, however, the sentencing judge must still "consider[] the factors set forth in section 3553(a) to the extent that they are applicable . . . ." *Id.* § 3582(c)(1)(A). The burden of proof rests on the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

---

[1] *Available at* https://www.bop.gov/coronavirus.

The § 3553(a) factors include:

    (1)    the nature and circumstances of the offense and the history and characteristic of the defendant;

    (2)    the need for the sentence imposed—

        (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B)    to afford adequate deterrence to criminal conduct;

        (C)    to protect the public from further crimes of the defendant; and

        (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    (3)    the kinds of sentences available;

    (4)    the kinds of sentence and the sentencing range established for—

        (A)    the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . or;

        (B)    in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission . . .;

    (5)    any pertinent policy statement—

        (A)    issued by the Sentencing Commission . . .; and

        (B)    that . . . is in effect on the date the defendant is sentenced[;]

    (6)    the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

    (7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

"The judge need not address every factor 'in checklist fashion, explicitly articulating its conclusions regarding each one.' " *See United States v. Kappes*, 782 F.3d 828, 845 (7th Cir. 2015) (quoting *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008)). It is enough to "simply give an adequate statement of reasons, consistent with § 3553(a), for thinking" that a sentence modification is, or is not, appropriate. *See Shannon*, 518 F.3d at 496.

### B. The § 3553(a) Factors Weigh Against Compassionate Release

The Court acknowledges the particular danger posed by the COVID-19 pandemic to prisoners, who live in close quarters and often cannot practice social distancing. "But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). The Bureau of Prisons is in the best position to know which inmates are most vulnerable to infection and whether they still pose a public-safety risk. And since March 2020, BOP has released over 8,000 inmates that it has identified as "suitable for home confinement." *Coronavirus*, BOP (last visited Dec. 1, 2020).[2] Although not bound by any BOP determination, the Court gives it some deference in this area "considering [its] statutory role, and its extensive professional efforts to curtail the virus's spread." *Raia*, 954 F.3d at 597.

With that in mind, the § 3553(a) factors weigh against a sentence modification here. Calvert's assertion that "she was not. .. a danger to society" when she committed the underlying offense underscores the need for incarceration—<u>selling and abusing drugs presents a significant risk to the community</u>, including her own family. That said, the Court commends her for the strides she has made to better herself while incarcerated. The Court is especially sympathetic to Calvert's parents, who have been tasked with childrearing at an advanced age while also navigating grave

---

[2] *Available at* https://www.bop.gov/coronavirus/.

medical conditions. But although no one could have predicted the COVID-19 pandemic, Calvert knew that her criminal activity would leave her children motherless—yet she continued anyway. The risk posed to her parents is also immaterial: "<u>death or incapacitation</u> of the caregiver of the defendant's minor child or minor children" is an independent basis for compassionate release, U.S. Sentencing Guidelines Manual § 1B1.13, Application Note 1(C) (emphasis added), which is inapplicable here. Put differently, even given the COVID-19 virus and Calvert's increased vulnerability to it, further incarceration remains necessary to reflect the seriousness of the offense, the promote respect for the law, to adequately deter further criminal conduct from Calvert and others, to provide further drug treatment, and to ensure the safety of the community.

### III. CONCLUSION

The Court **DENIES** Defendant Misty D. Calvert's Motion for Compassionate Release.

**IT IS SO ORDERED.**

**Dated: Tuesday, December 1, 2020**

<u>**S/J. Phil Gilbert**</u>
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**